IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SUNDAY'S CHILD, LLC, SUNDAY'S THIRD CHILD, LLC, SUNDAY'S FOURTH CHILD, LLC, and SUNDAY'S FIFTH CHILD, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> IRONGATE AZREP BW LLC, <br><br> Defendant. | CIVIL NO. 13-00502 DKW-RLP <br><br> **ORDER DENYING DEFENDANT IRONGATE AZREP BW LLC'S MOTION TO DISMISS COUNTS III, IV, V, VI AND VII OF PLAINTIFFS' COMPLAINT** |

**ORDER DENYING DEFENDANT IRONGATE AZREP BW LLC'S MOTION TO DISMISS COUNTS III, IV, V, VI AND VII OF PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

The Sunday's Companies[1] allege various state-law claims arising out of the purchase of condominium units from developer and seller Irongate AZREP BW LLC ("Irongate"). Irongate seeks dismissal of the claims for conversion and unjust enrichment because they are redundant of the facts and duties at issue in Plaintiffs' breach of contract claims. According to Irongate, the Sunday's Companies have an

---

[1]The Court refers to the four Plaintiff LLCs collectively as the "Sunday's Companies." They are Sunday's Child, LLC; Sunday's Third Child, LLC; Sunday's Fourth Child, LLC; and Sunday's Fifth Child, LLC.

1

adequate remedy at law through their contract claims and, therefore, neither tort damages nor equitable remedies are available.

Although the Sunday's Companies may not recover twice for the same injury in contract, tort or any other theory of liability, their claims for conversion and unjust enrichment are sufficiently alleged as alternatives to their claims for breach of contract. Accordingly, Irongate's Motion to Dismiss is denied with respect to Counts III and V.

Further, because the parties agree that the Court's previous dismissal of Counts IV, VI, and VII is unaffected following remand from the United States Court of Appeals for the Ninth Circuit, Irongate's Motion to Dismiss is denied as moot as to those claims.

## BACKGROUND

### I. Plaintiffs' Complaint

The Sunday's Companies seek to recover deposits paid under Sales Contracts for four condominium units in the Trump International Hotel & Tower at Waikiki Beach Walk ("Project"). Irongate, the Project's developer, contends that it is entitled to retain the deposits following a Settlement Agreement between the parties and Plaintiffs' acknowledged failure to close.

The Complaint alleges that in November 2006, the Sunday's Companies executed separate Sales Contracts to purchase the four Project units, advancing

twenty percent of the purchase price as a deposit to Irongate.  Complaint ¶¶ 9-10.  The Sunday's Companies' failure to perform their contractual obligations entitled Irongate to terminate the contract.  In that event, the Sales Contracts permitted Irongate to retain fifteen percent of the sales prices of the units with any deposit overage being returned to the purchaser.  Complaint ¶¶ 12-13.

In July 2009, a series of disputes arose between Irongate and several purchasers, including the Sunday's Companies.  On May 13, 2011, the Sunday's Companies entered into a Settlement Agreement with Irongate that resolved their dispute.  Complaint ¶¶ 14-16.  According to the Sunday's Companies, the Settlement Agreement did not modify the Sales Contracts, including Irongate's obligation to return any deposits exceeding fifteen percent of the sales price in the event of termination.  Complaint ¶¶ 18-19.

After executing the Settlement Agreement, changing the units to be purchased, and making an additional $50,000 deposit, the Sunday's Companies were not successful in their attempts to secure financing to complete their transaction.  Unable to finance and close on the units, Irongate elected to terminate the Sales Contracts on June 23, 2011.  The Sunday's Companies demanded that Irongate return all deposits in excess of fifteen percent of the sales price, but Irongate declined to do so.  Complaint ¶¶ 20-26.

The Sunday's Companies allege that Irongate breached the Sales Contracts by failing to return the excess deposits and to release certain escrow funds to them (Count I), and seek a declaration to the same effect (Count II). The Complaint also asserts claims for conversion (Count III), tortious breach of contract (Count IV), unjust enrichment (Count V) and breach of the implied covenant of good faith and fair dealing (Count VII), and seeks punitive damages (Count VI).

## II.  Prior Rulings

In a February 4, 2014 Order, the Court granted Irongate's motion to dismiss. The Court found that, because the claims asserted in this action arise out of the purchase and sale of the units, the Sunday's Companies waived and released their deposit and escrow claims when they entered into the Settlement Agreement.[2]  *See* Dkt. No. 22 (2/4/14 Order).

---

[2]The relevant portion of the Settlement Agreement provides:

> 8.      Purchaser's Release.  Each Releasor and each of such releasor's members, successors, heirs, assigns, parents, owners, investors, managers, agents, officers, directors, employees, attorneys, lenders, insurers and affiliates (collectively, "Releasor") hereby releases Releasee and each of Releasee's member, successors, heirs, assigns, parents, owners, investors, managers, agents, officers, directors, employees, attorneys, lenders, insurers and affiliates (collectively, "Released Parties") from the claims made or asserted or that could have been made or asserted, in the Litigation, including but not limited to claims for equitable and/or legal relief and including damages of any and all kind; provided, however, that this release does not include or release claims that Releasor may have arising (a) after the execution of this Agreement, (b) out of any design or construction defect claims, known or unknown, and (c) out of the contractual duties, rights or obligations of the Released Parties, if any, relating in any way to

The Court dismissed the claim for breach of contract (Count I), and likewise concluded that, to the extent the Sunday's Companies' remaining claims for declaratory relief (Count II), conversion (Count III), tortious breach of contract (Count IV), unjust enrichment (Count V), and breach of the implied covenant of good faith and fair dealing are covered by the Settlement Agreement, they likewise failed, because they sought the recovery of deposits paid pursuant thereto. Additionally, the Court dismissed the claim for punitive damages, which cannot be maintained as a stand-alone cause of action (Count VI). *See* Dkt. No. 22 at 11-12 (2/4/14 Order).

In a November 15, 2016 memorandum disposition, the Ninth Circuit reversed the Court's February 4, 2014 Order, concluding instead that the Settlement Agreement is ambiguous as to the extent to which the Sunday's Companies' claims

---

> the (i) management and/or operation of the Front Desk Unit, (ii) the Home Owners Association ("HOA"), including without limitation and claims made by or on behalf of the HOW, and any claims made against the HOA, and/or (iii) the assignment or non-assignment of the Trump License to the HOA. In other words, upon the execution of this Agreement, this release is intended to forever release and waive any and all claims by the Releasor arising out of the purchase and sale of the Units and the Litigation, but is not intended to release, limit or impair in any respect Releasor's claims as owner of the Units existing after the execution of this Agreement, subject to and limited only by the release described in this paragraph.  To the extent Releasor is a party to the Litigation, Releasor also agrees to execute a stipulation for dismissal with prejudice of any and all claims that have been, or could have been, made or asserted in accordance with the terms of this release.

Settlement Agreement at 3-4, Dkt. No. 22 at 6-7 (2/4/14 Order).

are barred, and remanded for further proceedings. *See* Dkt. No. 43. The Sunday's Companies did not appeal and the Ninth Circuit's ruling did not disturb the Court's dismissal of Count IV (tortious breach of contract), Count VI (punitive damages), and Count VII (breach of the implied covenant of good faith and fair dealing).

Irongate now seeks dismissal of the Sunday's Companies' non-contract claims, arguing that Hawaii law does not allow for recovery in tort or in equity where the parties' rights and claims are governed by contract.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8(a)(2). *Id*. at 679.

## DISCUSSION

Preliminarily, the parties agree that the Ninth Circuit's November 15, 2016 ruling left untouched the Court's dismissal of Count IV (tortious breach of contract), Count VI (punitive damages), and Count VII (breach of the implied covenant of good faith and fair dealing). Accordingly, Irongate's motion to dismiss is denied as moot as to those claims.

Irongate's motion to dismiss the Sunday's Companies' conversion and unjust enrichment claims is addressed below.

### I.    **Count III: Conversion**

Irongate seeks dismissal of Count III, contending that conversion cannot be pled in the alternative to Plaintiffs' claims for breach of contract. According to Irongate, the rights and liabilities of the parties are entirely governed by the Sales

Contracts and Settlement Agreement, and even Plaintiffs do not assert any duty owed by Irongate independent of the contracts. The Court agrees that the Sunday's Companies may not obtain a double recovery, *e.g.* tort damages that are identical to contract damages for the same conduct that gives rise to Plaintiffs' various claims. However, the Court does not read the allegations of the Complaint in the circumscribed manner urged by Irongate. The Court simply cannot determine at present whether possible tort remedies that might be available are duplicative of or even broader than the damages available under the contracts, or whether the remedies for each type of claim are indistinguishable, as Irongate insists. In fact, at this stage, it could be the case that contract damages are not available at all to Plaintiffs, with a tort recovery ending up being Plaintiffs' only avenue of relief. At the pleading stage of the litigation, the allegations in the Complaint sufficiently state a conversion claim in the alternative to the breach of contract causes of action.

Count III alleges as follows:

> 41. Pursuant to the terms of the Sales Contracts, the Excess Deposits were to be refunded to the Plaintiffs if Irongate exercised its right to terminate the Sales Contracts.
>
> 42. Irongate exercised its right to terminate the Sales Contracts, but did not return the Excess Deposits.
>
> 43. Irongate has no right to possess or use the Excess Deposits.
>
> 44. Irongate has failed and refused to return the Excess Deposits and has converted the funds to its own use.

     45. Irongate's actions constitute a misappropriation and conversion of the Plaintiffs' property.

Complaint ¶¶ 41-45.

  Irongate maintains that the claim for conversion and any corresponding recovery arise entirely from the alleged breach of the Sales Contracts. It argues that Count III must be dismissed because the parties' conduct and claims are solely governed by the contracts, and under these circumstances, Hawaii law will not allow the Sunday's Companies to pursue tort theories. *See* Mem. In Supp. at 10. Irongate relies on *Francis v. Lee Enterprises, Inc.*, which held that "Hawai'i law will not allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." 89 Hawai'i 234, 244, 971 P.2d 707, 717 (1999). As this district court explained, however, "*Francis* prohibits a double recovery; it does not prohibit a plaintiff from alleging a contract claim and tort claims based on the same facts as an alternate theory of liability." *Hele Ku KB, LLC v. BAC Home Loans Servicing, LP,* 2011 WL 5239744, at *7 (D. Haw. Oct. 31, 2011). That is the case here.

  To the extent Irongate's quarrel turns on whether the Complaint sufficiently identifies an independent duty transcending the breach of contract, the claim survives a Rule 12(b)(6) motion, properly accounting for Rule 8's pleading

standards. Rule 8(a)(3) provides that a "pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 8(d) further provides:

> **(1) In General.** Each allegation must be simple, concise, and direct. No technical form is required.
>
> **(2) Alternative Statements of a Claim or Defense.** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> **(3) Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

Consequently, the Sunday's Companies may *allege* both contract and tort claims against Irongate and are not required to elect a single legal theory upon which to proceed.[3] If Irongate's conclusions are correct, and the conversion claim merely

---

[3]When alleging these claims alternatively, the Sunday's Companies need not expressly state that the conversion claim is pled in the alternative to the breach of contract claim. *See, e.g., Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1103 (D. Haw. 2014) ("Indeed, Rule 8(d) allows a plaintiff to plead in the alternative and, contrary to [defendant's] assertions, there is no requirement that Plaintiff include the magic words 'in the alternative' in making alternative claims."); *Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 2013 WL 5402093, at *8 (N.D. Cal. Sept. 26, 2013) ("Plaintiff need not use the magic word 'alternatively' to indicate that its claim was made in the alternative. 'Under Rule 8, plaintiff need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what [he was] doing.'") (quoting *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003)); *Cliffton Equities, Inc. v. Summerlin Asset Mgmt. III, LLC*, 2012 WL 6570940, at *1 n.2 (D. Ariz. Dec. 17, 2012) ("While the defendant's counsel conceded at oral argument that the unjust enrichment counterclaim was not expressly pleaded as an alternative to the breach of contract counterclaim, that is not legally significant because 'there are no requirements to include the magic words "in the alternative" in making alternative claims.'") (quoting *Arnold &*

duplicates the breach of contract claims, the Sunday's Companies cannot ultimately *recover* under both theories.

To the extent Irongate argues that the Complaint does not sufficiently allege that the initial taking of the deposits was wrongful, the Court finds that Count III is sufficiently pled. Although some iterations of conversion require "taking from the owner without his consent," the core of the "common law tort claim of conversion involves 'wrongful dominion over the property of another.'" *Sung v. Hamilton,* 710 F. Supp. 2d 1036, 1043 (D. Hawai'i 2010) (quoting *Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1321 (D. Haw. 1999)). Under Hawaii law:

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time. *Tsuru v. Bayer,* 25 Haw. 693, 697 (Haw. Terr. 1920). "Conversion encompasses the following acts: '(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" *Freddy Nobriga Enterprises, Inc. v. State, Dep't of Hawaiian Home Lands,* 129 Hawai'i 123, 129, 295 P.3d 993, 999 (App. 2013) (quoting *Tsuru,* 25 Haw. at 696)[.]

---

*Associates, Inc. v. Misys Healthcare Systems*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003)). *But see Lopes v. Vieira*, 488 F. Supp. 2d 1000, 1048 (E.D. Cal. 2007) (Dismissing with leave to amend a claim for negligent misrepresentation alleged in the same cause of action as a claim for intentional misrepresentation, explaining that "[a]lthough alternative legal theories can be alleged in separate claims, it is improper to join two inconsistent claims in one.").

11

*Yoneji v. Yoneji*, 136 Hawai'i 11, 16, 354 P.3d 1160, 1165 (Ct. App. 2015).[4] The *Yoneji* decision made clear that "the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant to a conversion claim." *Id.* at 16, 354 P.3d at 1165; *see also Freddy Nobriga*, 129 Hawai'i at 130, 295 P.3d at 1000 ("So long as he [or she] intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, he [or she] is a converter.") (citation omitted).

The Complaint satisfactorily alleges a claim for conversion. Here, the alleged taking and retention of the deposits, assumption of ownership of the funds, and refusal to return the deposits after demand was made, sufficiently state a claim for conversion of specific, identifiable funds. Further, the Sunday's Companies assert that Irongate attempted to convert funds held in escrow to its own use and wrongfully detained them after demand.[5] Because the Complaint sufficiently states

---

[4]*See also Sung,* 710 F. Supp. 2d at 1044 ("[A]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. . . . While therefore it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right. . . . The word 'conversion' by a long course of practice has acquired a technical meaning. It means detaining goods so as to deprive the person entitled to the possession of his dominion over them[.]") (quoting *Tsuru*, 25 Haw. 693, 1920 WL 830 at *2).

[5]The Complaint alleges as follows:

> 27. Further, in November 2011, Irongate also attempted to convert $127,349.32 of the Sunday's Entities' Funds which remain in escrow (the "Escrow Funds") to its own use.
>
> 28. Despite the Sunday's Entities clear right to recover the Escrow Funds, Irongate has refused to instruct the escrow company to release the Escrow Funds to the Sunday's Entities.

a claim for conversion in the alternative to the claims for breach of contract, the Motion is denied with respect to Count III.

## II.   Count V: Unjust Enrichment

Irongate seeks dismissal of the claim for unjust enrichment on the grounds that the Sunday's Companies do not seek an equitable recovery beyond what they would receive if they succeed on their breach of contract claim, and because the contract provides them with an adequate remedy at law.   The Court disagrees and finds that dismissal at this stage is not warranted.   Like the claim for conversion, the claim for unjust enrichment may be alleged in the alternative to the claims for breach of contract, under the circumstances presented here.[6]

---

29.  Between June of 2012 and October of 2012 – and while continuing to hold the Excess Deposits and refusing to release the Escrow Funds – Irongate sold each of the Units to new buyers.

30.  Upon information and belief, Irongate sold the Units to third parties for approximately $250,000 more than Irongate would have received under the Sales Contracts.

31.  As a result of the additional profit earned by Irongate when it sold the Units to third parties, Irongate does not have any actual damages to support withholding any of the deposits under Hawaii law.

Complaint ¶¶ 27-31.

[6]*See, e.g., Isofoton, S.A. v. Giremberk*, 2006 WL 1516026, at *4 (D. Ariz. May 30, 2006) (In a case involving breach of contract and unjust enrichment claims arising from alleged failure to pay for products under a commission agreement, the court denied a motion to dismiss the unjust enrichment claim, concluding that it was properly pled as an alternative theory of recovery under Rule 8 because no findings had been made regarding the existence of a binding agreement and whether the benefit of the bargain had been received.); *cf. U.S. Bank Nat'l Ass'n v. Casa Grande*

13

Count V alleges: "By retaining all of the deposits paid by the Sunday's Entities in spite of the fact that it suffered no actual damages as a result of the Sunday's Entities' inability to close on the Units, Irongate has been unjustly enriched." Complaint ¶ 53. These allegations are sufficient to state an equitable claim for unjust enrichment. This district court has previously explained that:

> Claims for unjust enrichment and *quantum meruit* derive from principles of equity and quasi-contract. *See Porter v. Hu*, [116 Hawai'i 42] 16[9] P.3d 994, 1007 (Haw. 2007); *Hiraga v. Baldonado*, 96 Hawai'i 365, 31 P.3d 222, 229 (Haw. [Ct. App.] 2001). Hawai'i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'" *Porter*, 169 P.3d at 1007 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). The absence of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims. *Id.* (quoting *Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture*, 2 Haw. App. 506, 635 P.2d 244, 249 (Haw. Ct. App. 1981)).

*Swartz v. City Mortg., Inc.*, 911 F. Supp. 2d 916, 938 (D. Haw. 2012) (citing *AAA Hawaii, LLC v. Hawaii Insurance Consultants, Ltd.*, 2008 WL 4907976 at *3 (D. Haw. Nov. 12, 2008)); *see also Durrette v. Aloha Plastic Recycling, Inc.*, 105

---

*Regional Medical Center*, 2006 WL 1698288, at *6 (D. Ariz. June 16, 2006) (Ruling on summary judgment that the existence of a contract between the parties did not preclude the unjust enrichment claim where "an unjust enrichment claim may be brought in the alternative, subject to a single recovery, so long as the unjust enrichment claim does not seek to relieve the plaintiff of the effects of an express provision in the contract. . . . Here, even if the contracts did not provide for reimbursement, they in no way prohibited reimbursement of such an overpayment. [The plaintiff's] unjust enrichment claim therefore does not seek to subvert any express provision of the parties' contract and was properly raised in the alternative.").

Hawai'i 490, 100 P.3d 60, 61 (2004) (unjust enrichment occurs when the plaintiff confers a benefit on the defendant, and the defendant unjustly retains the benefit).

The Court cannot determine at this nascent stage whether the Sunday's Companies have an adequate remedy at law through their contract claim. What is clear is that the Complaint adequately alleges that Plaintiffs seek the return of the deposits and escrow funds, and that Irongate does not have any actual damages to support withholding of these monies. *See* Complaint ¶¶ 31, 53-54. The Sunday's Companies note that their unjust enrichment claim "is meant to ensure that a complete recovery can be obtained, even where . . . the express contract does not fully address an injustice." Mem. in Opp. at 10.

Irongate's assertion that the parties' dispute will be answered entirely by the parties' contracts may turn out to be correct. At this point, however, that is a prediction, not a certainty. Accordingly, the Motion is denied with respect to Count V, and Plaintiffs may proceed with their unjust enrichment claim as an alternative theory of recovery under Rule 8(d).

## **CONCLUSION**

For the foregoing reasons, Irongate's Motion to Dismiss is DENIED as to Counts III and V. The Motion to Dismiss is DENIED AS MOOT with respect to Counts IV, VI, and VII, which were dismissed by the Court's prior order. *See* Dkt. No. 22.

IT IS SO ORDERED.

DATED: February 10, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*Sunday's Child, LLC et al. v. Irongate AZREP BW LLC*, CV NO 13-00502 DKW-RLP; **ORDER DENYING DEFENDANT IRONGATE AZREP BW LLC'S MOTION TO DISMISS COUNTS III, IV, V, VI AND VII OF PLAINTIFFS' COMPLAINT**